# In the United States Bankruptcy Court for the Southern District of Georgia
## Dublin Division

FILED
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
By dreese at 10:59 am, Dec 22, 2014

In the matter of: )
)
JOSHUA BEASLEY and )
JENNIFER BEASLEY, )
)
        *Debtors.* )
)

Chapter 13 Case

Number 09-30534-EJC

## OPINION AND ORDER ON MOTION TO COMPEL DISCHARGE

This case is before the Court on the Motion to Compel Discharge Under Section 1328(A) [sic] of Title II [sic] of the United States Code ("Motion") (dckt. 80) filed by Joshua and Jennifer Beasley ("Debtors"), which seeks the refund of all amounts received by the Chapter 13 Trustee in excess of the $40,980.00 that Debtors' confirmed plan provided would be paid in monthly installments over five years. Huon Le, the Chapter 13 Trustee ("Trustee"), filed a response objecting to the relief sought. The parties disagree about whether Debtors should receive credit for a $1,084.57 money order that Debtors paid to Trustee and that Trustee immediately disbursed to satisfy the unsecured portion of a creditor's claim pursuant to the terms of an order granting the sale of that creditor's collateral. Because the Court concludes that the sale order modified Debtors' plan by providing for an additional payment of $1,084.57, the proper amount that Trustee must turn over to Debtors is $367.67.

AO 72A
(Rev. 8/82)

I.   JURISDICTION

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) ("matters concerning the administration of the estate") and (L) ("confirmation of plans"). In accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure, the Court makes the following Findings of Fact and Conclusions of Law.

II.   FINDINGS OF FACT

The parties do not dispute the relevant facts. Debtors filed a Chapter 13 petition on September 19, 2009. (Dckt. 1.) Debtors proposed a plan with monthly payments of $683.00 for sixty months and a zero-percent dividend to unsecured creditors based on their calculation that the applicable commitment period was five years and that the amount of their disposable income was determined under 11 U.S.C. § 1325(b)(3) because they have above-median income. (Dckt. 1, at 37; dckt. 7.) Pursuant to General Order 2007-2, the Court entered an order to commence withholding $683.00 per month from Mr. Beasley's employer. (Dckt. 13.) The Court confirmed Debtors' plan on November 10, 2009. (Dckt. 33.)

On October 14, 2013, Debtors filed a motion to sell their 2007 Ford F-150 ("truck"). (Dckt. 70.) This truck secured the claim of Georgia Federal Credit Union ("credit union"), which had been bifurcated by the plan into a secured and unsecured

portion. When the motion to sell was filed, the secured portion of that claim had already been paid in full. (Dckt. 70.) The motion to sell provided for the full repayment of the unsecured portion of the credit union's claim so that the credit union would release its lien before all plan payments were completed.

On November 19, 2013, the Court entered an order granting the motion to sell in the form prepared by Debtors and consented to by Trustee. (Dckt. 74.) The sale order provided that (1) the sale of the truck for $8,000.00 was approved; $1,084.57 of that amount was to be turned over to Trustee to be disburse "immediately" to the credit union on Claim 1.1 (unsecured portion of claim); and (3) the credit union was required to release its lien on the truck once it received that amount and Claim 1.0 and 1.1 were to be "reduced to amount paid." Debtors and Trustee complied with the terms of the sale order. The confirmed plan as filed did not provide that the unsecured portion of the credit union's claim would be paid in full. Debtors did not file a separate plan modification in connection with their motion to sell the truck.

If Debtors had paid Trustee only the $683.00 for sixty months (as stated in their plan), Trustee would have received only $40,980.00. However, Trustee has received a total of $42,432.24 from all sources: $683.00 money order, payroll deductions, and $1,084.57 money order. In addition to disbursing the proceeds from the $1,084.57 money order to the credit union, Trustee has disbursed $40,401.98 to creditors and still has $945.69 remaining.

On August 7, 2014, Debtors filed the Motion now under the Court's consideration, seeking a discharge and to be reimbursed for all payments made to Trustee in excess of what was required under their confirmed plan. (Dckt. 80.) On August 12, 2014, Trustee filed a response objecting to the Motion on the basis that Debtors had not complied with the applicable commitment period of five years because the Motion was filed during the fifty-ninth month of their plan to repay creditors. The Court held a hearing on September 9, 2014, which was continued to October 14, 2014. (Dckt. 86.) The Court ordered that a release of wages order be submitted and that Trustee cease any disbursements pending the resolution of the Motion. At the October 14, 2014 hearing, the parties asked for yet another continuance so that they could "work out" a stipulation of facts prior to the hearing. Consequently, the Court continued to the hearing to December 9, 2014; however, a joint stipulation of facts was never submitted. After the conclusion of the December 9 hearing, the Court took the matter under advisement.

III. CONCLUSIONS OF LAW

A. Debtors' Motion Is No Longer Premature

As a threshold matter, Debtors filed the Motion during the fifty-ninth month of their plan, seeking, *inter alia*, a discharge on the grounds that plan payments were complete. As Trustee correctly points out, in *Whaley v. Tennyson (In Tennyson)*, 611 F.3d 873 (11th Cir. 2010), the Eleventh Circuit Court of Appeals held that the "applicable commitment period" is a temporal term that establishes the minimum duration of a debtor's Chapter 13 plan. Debtors' counsel conceded at the October 14, 2014 hearing that

4

*Tennyson* applies and, as a result, the Motion was premature. Due to continuances of the hearing on the Motion, however, the five-year minimum duration of Debtors' plan has been satisfied and the Motion is no longer premature.

B.   The Plan Was Modified by Virtue of the Sale Order

"A Chapter 13 plan of confirmation has *res judicata* effect unless it is subsequently modified by a bankruptcy court order." *Sys. & Servs. Techs., Inc. v. Davis (In re Davis)*, 314 F.3d 567, 570 (11th Cir. 2002) (citing 11 U.S.C. §§ 1327, 1329). Although it is a best practice to label a modification something akin to "Motion for Modification of Plan," the Bankruptcy Code does not dictate that the mere styling of a filing determines its "operative effect." *Ritts v. Grigsby*, 308 B.R. 231, 235 (D. Md. 2004). "In other words, to the extent that a request of the Court necessarily seeks modification of a plan and to the extent that the Bankruptcy Court eventually grants the requested relief, the plan is *de facto* modified." *Id.*

Bankruptcy Code § 1329 governs modifications of Chapter 13 plans after confirmation. That section provides in relevant part: "At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to . . . alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan." 11 U.S.C. § 1329(a)(3).

5

Debtors and Trustee both argue that the other should have filed a modification. Perhaps, both parties are correct, but the Court must take the facts as they come. The motion to sell necessarily sought modification of Debtors' plan because it proposed that the credit union's unsecured claim be paid in full, whereas the credit union's unsecured claim was to be paid pro rata with the unsecured claims class under the plan. The Court granted that relief by Order dated November 12, 2013. As a result, Debtors' plan was *de facto* modified. *See Ritts*, 308 B.R. at 235. The plan was effectively modified under § 1329(a)(3) to provide that the distribution on the unsecured portion of the credit union's claim was reduced to zero "to take account of" the fact that it had been fully satisfied by "payment of such claim other than under the plan." 11 U.S.C. § 1329(a)(3).

C. The Amount of Debtor's Refund

Until the fiftieth month of Debtors' plan, the credit union's unsecured claim was being paid pro rata. During the fiftieth month, Debtors chose to repay that claim in full. Unsecured claims are not paid in full under Debtors' plan. Therefore, some of the remaining amount of the credit union's unsecured claim would have been paid over the remaining months of the plan if the sale order was not entered, but the claim would not have been fully paid.

Debtors' position at the December 9 hearing was that they should receive

credit for the portion of the $1,084.57 that would have been disbursed to the credit union anyway. In support, Debtors argue the $1,084.57 money order represents "exempt money" that Trustee was not entitled to disburse other than under the terms of their plan. In response, Trustee takes the position that Debtors should not receive any credit towards their plan payments because the $1,084.57 of proceeds were used to pay in full the unsecured portion of a claim that was not proposed to be paid in full under the terms of the plan. Moreover, Trustee argues that Debtors received a benefit from paying in the "extra" $1,084.57 because they were able to sell the truck earlier than they may have been otherwise.

The Court agrees with Trustee. As a result, Trustee may disburse $578.02 of the remaining funds to creditors but must also turn over $367.67 to Debtors. The situation in this case is different from cases where the debtor has simply paid in money faster than required to under a confirmed plan. In such a case, absent modification, the trustee would not be permitted to disburse more money to creditors than the amount of the debtor's plan payment times the number of payments. *See In re Jafary*, 333 B.R. 680, 687 (Bankr. S.D.N.Y. 2005). Here, Debtors requested and obtained a court order that required Trustee to *immediately* disburse funds to satisfy a claim that was not planned to be satisfied. Unsecured creditors other than the credit union would receive a lower dividend if Debtors were to receive full credit towards their plan payments for the $1,084.57 payment to Trustee. Debtors' argue that no creditor would be worse off if they only

receive credit for what would have been paid on the credit union's unsecured claim in any event. At first glance, Debtors' position seems reasonable. However, there is no legal basis for the relief they seek, and in order to grant them such relief, the Court would be forced to disregard what actually happened procedurally in this case.

Additionally, the interpretation that Debtors seek is foreclosed by the fact that a proposed plan, including any modification thereof, must comply with Bankruptcy Code § 1322(a)(3). *See* 11 U.S.C. § 1329(a). That provision provides: "if the plan classifies claims, [it] shall provide the same treatment for each claim within a particular class." *Id.* § 1322(a)(3). As discussed above, unsecured claims are paid pro rata under the plan, but the credit union's unsecured claim was paid in full. To accept Debtors' interpretation, the Court would necessarily have to find that it condoned through a sale order what it could not have permitted in a plan modification—namely, the disparate treatment of claims within the same class. This, the Court cannot and will not do.

D. <u>Trustee Has Not Breached Fiduciary or Statutory Duties Owed to Debtors</u>

On October 10, 2014, Debtors filed a document titled "Stipulation of Facts and Conclusions of Law" (dckt. 88); however, Trustee did not agree to its contents and, therefore, the Court construes the document simply as a brief in support of their Motion. In this brief, Debtors raise the argument that Trustee breached her duties to them by disbursing funds in addition to those required under their plan. This argument is

meritless. As discussed above, Trustee has not disbursed too much money to creditors. Trustee is currently holding money that is due to be disbursed to creditors but has delayed such disbursement pending the resolution of Debtor's Motion.

## O R D E R

Based on the foregoing, it is ORDERED that Debtors' Motion (dckt. 80) is GRANTED in part and DENIED in part. Trustee may disburse $578.02 to creditors but must turn over $367.67 to Debtors. Once it is determined that the requirements for a discharge under 11 U.S.C. § 1328(a) are met, a discharge will be entered unless prohibited by the Bankruptcy Code.

Dated at Savannah, Georgia, this 22nd day of December, 2014.

_____
Edward J. Coleman, III
United States Bankruptcy Judge
Southern District of Georgia